IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>ANDRUW MELENDEZ MAYORA,<br>Defendant. | **8:26-CR-31**<br><br>**ORDER ON THE GOVERNMENT'S MOTION FOR REVIEW OF RELEASE ORDER** |

This matter is before the Court on the Government's Motion for Review of Release Order (Motion for Review) asking the Court to overrule a magistrate judge's order granting defendant Andruw Melendez Mayora pretrial release. Filing 65. On motion of the Government, the Court stayed the magistrate judge's release order pending the Court's ruling on the Motion for Review. Filing 65 (Motion for Stay); Filing 70 (Order Staying Magistrate Judge's Release Order). The Court ordered the defendant to file a written response to the Government's Motion for Review. Filing 65. On August 12, 2026, the defendant filed a Response to the Government's Motion for Stay and Review of Release Order. Filing 76.

The Court has conducted a *de novo* review of the record in this case and has considered the parties' submissions. For the reasons stated below, the Government's Motion for Review is granted, and the magistrate judge's release order is revoked.

## I. BACKGROUND

On February 18, 2026, the grand jury in the District of Nebraska returned a one-count Indictment charging nineteen coconspirators, including the defendant, with conspiracy to commit

money laundering in violation of 18 U.S.C. § 1956(h). Filing 1. The Indictment alleges that members of an "ATM jackpotting conspiracy" would deploy malicious software (malware) designed to exploit the vulnerabilities of Automated Teller Machines (ATMs) and Interactive Teller Machines (ITMs), causing the machines to dispense cash without debiting an account. Filing 1 at 2–3, 7. The Indictment alleges that the jackpotting attacks served as a "revenue stream" for Tren de Aragua (TdA), "a violent transnational criminal organization that originated as a prison gang in Venezuela in the mid-2000s" and that has been designated as a Foreign Terrorist Organization by the United States Secretary of State. Filing 1 at 1, 3, 6. The Indictment also includes a Forfeiture Allegation seeking forfeiture of at least $6,126,321.00 as proceeds traceable to the charged offense. Filing 1 at 8–9.

On July 30, 2026, the defendant was arrested in the Northern District of Illinois. *See* Docket, United States of America v. Mayora, Case No. 1:26-cr-417-1 (N.D. Ill. 2026). He made his initial appearance before a magistrate judge in that district on July 31, 2026. The Government moved for detention, and the magistrate judge granted the Government's motion to have a detention hearing. The detention hearing was held on August 5, 2026. Filing 67-5. The magistrate judge issued a written order that same day denying the Government's motion, saying "the Government failed to meet its burden and that conditions of release could be fashioned for the defendant to be released." Filing 67-5 at 1. However, the magistrate judge granted "[t]he Government's oral motion to stay" and ordered "[t]he Government [to] file by 1:00 p.m. on 8/7/26 a status report advising whether the appeal has been filed and the status of the motion." Filing 67-5 at 1.

On August 6, 2026, the Government filed a Motion for Stay and Review of Release Order in the District of Nebraska, requesting that this Court review and overrule the magistrate judge's order. Filing 65. With the motion, the Government filed exhibits that included "multi-person

conversations (Ex. 1 and 2) recovered from the cell phone of Brayan Perez-Herrera (convicted in 3:25CR30020).” Filing 65 at 5 (saying Melendez Mayora was “saved in the Perez-Herrera phone as ‘Andruw [emoji] Primito[’]”); Filing 65-1; Filing 65-2. The submitted exhibits also include DHL shipping records, Filing 65-3, the defendant’s Immigration and Customs Enforcement (ICE) detainer, Filing 67-4, and the magistrate judge’s August 5, 2026, order denying the Government’s motion for detention, Filing 65-5.

In its Motion for Review, the Government proffers that a designated foreign terrorist organization, Tren de Aragua (TdA), engages in various criminal activities, including the commission of “jackpotting attacks targeting financial institutions in the United States and internationally.” Filing 65 at 3. The Government avers that TdA “uses a money laundering network to transfer and conceal illegally obtained proceeds among its members and associates.” Filing 65 at 3. The Government specifically avers,

> TdA’s money laundering technique typically uses high velocity, low dollar transfers via peer-to-peer money transferring services such as Zelle, meaning their money launderers commonly send a significant number of transfers in lower dollar amounts to other individuals or shell companies. The unlawful proceeds then arrive at an account where they are then congregated before being sent overseas where they are then, ultimately, converted from fiat currency into cryptocurrency.

Filing 65 at 3.

The defendant is alleged to have been part of the TdA money laundering network. Filing 65 at 3. The Government avers that “[o]n January 1, 2025, Melendez and his girlfriend of eight years, Frangelys Llelamo Paredes were captured on surveillance while making at least five $1,500 cash deposits into the Bank of America account ending in 4401 for Wladimir Jose Tejera Abreu, a defendant in 8:25CR242 who is charged with providing material support to terrorism among other crimes and a leader within the TdA jackpotting conspiracy.” Filing 65 at 3–4. The Government avers

that "Melendez engaged in at least eight transactions with Wladimir Jose Tejera Abreu." Filing 65 at 4.

The Government avers that Melendez Mayora's "involvement also appears to flow beyond simply laundering or proceeds. For example in multi-person conversations (Ex. 1 and 2) recovered from the cell phone of Brayan Perez-Herrera (convicted in 3:25CR30020), Melendez (saved in the Perez-Herrera phone as 'Andruw [emoji] Primito[']) is seen discussing reconnaissance of ATMs and committing ATM jackpotting attacks with other members and facilitators of the ATM jackpotting conspiracy." Filing 65 at 5. The conversation shows Melendez Mayora saying *inter alia* that "they" are going to see a "machine." Filing 65 at 5. Melendez Mayora also responds to a member of the messaging group, saying "[g]o to each one of the ones that I sent you [plural] because I'm going to another one that I have here, I'm 55 minutes [away]." Filing 65 at 5 (original emphasis omitted) (second and third alterations in original). The defendant also stated, "We are checking the machines, but it's [sic] empty we are heading to another one. . .19648 LaGrange Rd. Mokena, IL 60448" and "[w]e opened it. . .And the screen is down." Filing 65 at 6 (original emphasis omitted) (first alteration and ellipses in original).

The Government also avers that the defendant is from Venezuela, and there is an ICE detainer in place for him. Filing 65 at 7; Filing 65-4 (ICE Detainer).

On August 7, 2026, this Court issued an order staying the magistrate judge's August 5, 2025, release order pending the Court's ruling on the Government's motion for review of the magistrate judge's release order. Filing 70 at 2. The Court ordered the defendant to file a written response to the Government's motion. Filing 70 at 2

The defendant filed his Response to the Government's Motion for Stay and Review of Release Order on August 12, 2026. Filing 76. The defendant maintains that "the government has

not met its burden of proof regarding either the safety of the community or appearance in court." Filing 76 at 2. The defendant argues among other things that "[t]he Government tries to obfuscate Melendez's role's by writing extensively about how TdA members commit murder and assault and other acts of violence." Filing 76 at 2–3. According to the defendant, however, [a]ll the Government has proffered here are tangential and attenuated links to TdA and all that it alleges is that Mayora sent some payments into a Bank of America account that happened to belong to Abreu who was a leader within the jackpotting conspiracy and that Abreu may have been aware that the money is going to TdA." Filing 76 at 4 (footnote omitted). The defendant also argues that "[t]he Government has also not proven by preponderance of evidence that no conditions can reasonably assure the Defendant's appearance in court." Filing 76 at 6. The defendant cites to caselaw from the United States Court of Appeals for the Ninth Circuit for the proposition that alienage does not command detention and asserts that "[w]hat will reasonably assure the Defendant's presence in court is that he has built his life here in America, has two little children of which one is a U.S. Citizen, has a job here and moreover, that he wishes to build his future here and fight this case." *See* Filing 76 at 7.

## II. APPLICABLE STANDARDS

A magistrate judge's decision to release or detain a defendant pending trial is governed by 18 U.S.C. § 3142. Under 18 U.S.C. § 3145(a), "the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation" of a magistrate judge's order granting a defendant pretrial release. 18 U.S.C. § 3145(a)(1). The Government's "motion shall be determined promptly." 18 U.S.C. § 3145(a). The district court's review of a magistrate judge's pretrial release order is *de novo*. *See United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (en banc) (noting that the district court proceeds *de novo* in its review of a magistrate judge's pretrial

bond order); *United States v. Cook*, 87 F.4th 920, 921 (8th Cir. 2023) (referencing the district court's *de novo* review of the magistrate judge's pretrial detention order).

Under 18 U.S.C. § 3142(e)(1), a defendant will be detained pending trial if there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of any other person and the community." The Eighth Circuit Court of Appeals has explained that the Government bears different burdens of proof for showing that the defendant is a flight risk, *i.e.*, that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant, and for showing that the defendant is a safety risk, *i.e.*, that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community. *See United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). Specifically, pretrial detention is warranted "[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions . . . will *reasonably assure* the defendant's appearance. . . ." *Id.* at 797 (emphasis and ellipses in the original) (quoting *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003)). In determining whether the Government has met its burdens to prove that the defendant is a flight risk and a safety risk, the Court considers the following factors:

> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> **(2)** the weight of the evidence against the person;
>
> **(3)** the history and characteristics of the person, including—
>
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community,

> community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## III. LEGAL ANALYSIS

The Government argues that the defendant should be detained pending trial because "there are no conditions that will reasonably ensure [his] appearance" and because "Melendez's participation in money laundering activity in connection with a designated foreign terrorist organization and his association with leaders engaged in criminal activity poses a danger to any person and the community." Filing 65 at 8, 11. The Court has conducted a *de novo* review of the record and finds that the Government has met its burden to prove that the defendant is both a flight risk and a safety risk. Accordingly, the Court concludes that the defendant shall be detained pending trial. Because the Court can determine this matter on the record before it, the Court further concludes that there is no need to hold a hearing. *See United States v. Martin*, 447 F.Supp.3d 399, 402–03 (D. Md. 2020) ("However, 'there is no statutory requirement that the court hold a hearing' and the court 'retains the discretion to decide whether to hold a hearing.'" (quoting *United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019))).

The Court has evaluated the four factors set out in 18 U.S.C. § 3142(g) in reaching this conclusion and "take[n] into account the available information concerning" those factors. The Court considered the "nature and circumstances of the offense charged," conspiracy to commit money laundering, with respect to co-defendant Estefany Galindez Lopez in *United States v. Galindez*

*Lopez*, 8:26-CR-31, 2026 WL 1506717 (D. Neb. May 29, 2026). *Id.* at *4 (explaining the "nature and circumstances" for the same charged offense in the same case for purposes of reviewing a magistrate judge's release order as to co-defendant Estefany Galindez Lopez). In that case, the Court found that the "nature and circumstances of the offense charged" supported detention. *Id.* As in that case, "[a]lthough conspiracy to commit money laundering is not one of the offenses enumerated in 18 U.S.C. § 3142(g)(1), the allegations in the Indictment are sufficiently serious in nature and suggest the defendant's participation in a complex wide-reaching scheme with direct ties to a designated Foreign Terrorist, TdA." *Id.* These circumstances again support detention. *Id.*

The Indictment alleges that members and associates of TdA have used ATM jackpotting attacks to steal millions of dollars from financial institutions by conducting surveillance, breaking into ATMs, and deploying malware that forces the ATMs to dispense cash. Filing 1 at 3; *see* Filing 65 at 2–3. "The Indictment asserts that proceeds of the jackpotting attacks are split among many individuals, with the participants in a particular attack keeping a percentage of the proceeds and the remainder being delivered, distributed, transferred, or deposited with other members of the conspiracy, including conspiracy leaders and leaders of TdA." *Galindez Lopez*, 2026 WL 1506717, at *4 (citing Filing 1 at 7). The Indictment "also alleged that members of the conspiracy use 'high-velocity, low dollar transfers over peer-to-peer payment applications' to move the proceeds after an attack, and that the accounts connected to the payment applications are in individuals' names or in the names of business that are typically both Limited Liability Companies and shell companies." *Id.* (citing Filing 1 at 7). "The criminal activity alleged in this case is sophisticated and lucrative, and it apparently fits into a much bigger picture than the jackpotting attacks alone, as the Government contends that the proceeds obtained by the jackpotting attacks are funneled to TdA, which 'has an extensive portfolio of criminal activities to include, illegal gold mining, drug trafficking, firearms

trafficking, commercial sex trafficking, kidnapping, robbery, theft, fraud, and extortion.'" *Id.* (internal quotation marks omitted) (citing Filing 1 at 1, 6); Filing 65 at 2–3. The Court finds in this case, as it did in *Galindez Lopez*, that "the nature and circumstances of the offense charged weigh in favor of detention." *Id.*

Second, the Court has considered the "weight of the evidence" against the defendant and finds that this factor also weighs in favor of detaining the defendant pending trial. 18 U.S.C. § 3142(g)(2). The Government proffers that the defendant—in close connection to and coordination with his girlfriend and co-defendant Llelamo Paredes—participated in the high-velocity, low dollar transfers of jackpotting proceeds. Filing 65 at 3–4. The government points to Tejera Abreu's Bank of America account records from February of 2025," where Tejera Abreu apparently received small dollar payments from Melendez Mayora, Llelamo Paredes, and a Zelle payment sender purporting to be Llelamo Paredes's father. Filing 65 at 4–5. The defendant's connection to TdA and the alleged jackpotting scheme that underlies the offense that he has been charged with is further augmented by evidence proffered of ATM reconnaissance conducted by the defendant. Filing 65 at 5–6. Among other things, a group chat that the defendant participated in shows the defendant directing another member of the chat to "[g]o to each one of the [ATMs] that I sent you [plural] because I'm going to another one that I have here." Filing 67-2 at 2 (third alteration in original). Elsewhere, the defendant states that "[w]e are checking the machines, but it's [sic] empty we are heading to another one. . .19648 LaGrange Rd., Mokena, IL 60448." Filing 67-2 at 2 (second alteration and ellipsis in original). The Government proffered that the referenced ATM in Mokena, Illinois, was the subject of a jackpotting attack and that $8,800 was successfully stolen from it on February 17, 2025. Filing 65 at 6–7. Viewed against the backdrop of the allegations in the Indictment, the weight of the evidence against the defendant is significant enough to suggest that detention is appropriate.

Third, the Court has examined the "history and characteristics" of the defendant. 18 U.S.C. § 3142(g)(3). The Government argues that "Melendez has significant ties overseas. He is a national of Venezuela. Melendez also has a valid immigration detainer in place. Melenez has repeated financial interactions with leaders within the conspiracy who are in Venezuela. Communications recovered from co-conspirators reflect that Melendez is also participating in ATM jackpottings beyond just laundering proceeds." Filing 65 at 10. The Indictment, the Government's factual proffer, and the Government's submitted evidence support such ties to Venezuela and TdA. *See* Filing 1; Filing 65 at 2–7; Filing 67-1; Filing 67-2; Filing 67-4. The defendant does not challenge the Government's assertion that he is a Venezuelan national or that he is subject to a valid immigration detainer but instead argues that the facts that the defendant "has built his life in America, has two little children of which one is a U.S. Citizen, has a job here and moreover, that he wishes to build his future here and fight this case" warrant release. Filing 76 at 7. Put simply, the Court concludes that the defendant's ties to Venezuela and to a Foreign Terrorist Organization are stronger considerations. The balance of the evidence, considered against the backdrop of the allegations in the Indictment, show that the "history and characteristics" of the defendant make detention appropriate.

Lastly, the Court has considered "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g)(4). The Court's analysis on this factor relies on many of the factual circumstances discussed above. Relevant to this factor, as discussed elsewhere, is the connection between the alleged criminal activity and TdA. Moreover, the Government avers the defendant has "engaged in a number of financial transactions with Wladimir Jose Tejera Abreu," "who is charged with providing material support to terrorism among other crimes and a leader within the TdA jackpotting conspiracy." Filing 65 at 3–

4. What the Court explained in *Galindez Lopez* is true here too: "The Court is particularly concerned with the role TdA is alleged to play in the offense charged and with the defendant's alleged connections to TdA given TdA's status as a designated Foreign Terrorist Organization and the violent criminal activities TdA is accused of perpetrating." 2026 WL 1506717, at *5. The Court concludes that these facts weigh in favor of pretrial detention.

## IV. CONCLUSION

Based on the Court's *de novo* review of the record in this case—including the facts alleged in the Indictment, and the parties' arguments and proffered evidence—the Court finds that the Government has met its burden to prove by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance. The defendant has significant ties to Venezuela. Additionally, his immigration status in the United States and his repeated transactions with leaders of the conspiracy located in Venezuela suggest that it is more likely than not that the defendant poses a flight risk. The Court also finds that the Government has met its burden to prove by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. As with co-defendant Galindez Lopez, the charged offense is not a violent offense. However, the Court believes the Government has proffered sufficient evidence at this time connecting the charged offense to a violent organization and connecting the defendant to both alleged members of and alleged conduct committed by that organization. Taken together, the nature and circumstances of the charged offense, the weight of the evidence against the defendant, his ties to Venezuela, and his association with alleged TdA members all demonstrate a high probability that the defendant poses a safety risk.

The Court therefore grants the Government's Motion for Review of Release Order and revokes Magistrate Judge Weisman's order releasing the defendant pending trial.

Accordingly,

IT IS ORDERED:

1. The Government's Motion for Review of Release Order, Filing 65, is granted;

2. Defendant Andruw Melendez Mayora is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

3. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel; and

4. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated this 21st day of August, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge